IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA**

    Plaintiff,

v.

**WILLIAM BOYD FILLINGAME,**

    Defendant.

_____

No. 6:10-CR-60051-MC

OPINION AND ORDER

**MCSHANE, Judge**:

  Defendant William Boyd Fillingame renews his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). Def.'s. Mot. Reduce Sent. 1, ECF No. 32 ("Def.'s Mot."). Due to a cumulation of health concerns and favorable factors, the Court GRANTS Mr. Fillingame's motion for a 12-month reduction to his sentence.

## LEGAL STANDARD

  Congress, through the First Step Act, amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion directly with the district court for compassionate release after exhausting all administrative remedies. The Court may reduce a defendant's sentence after considering the applicable section 3553(a) factors if:

  (i)  extraordinary and compelling reasons warrant such a reduction; or

1 – OPINION AND ORDER

(ii) the defendant is at least 70 years of age, has served 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the BOP that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

(iii) and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Congress delegated the Sentencing Commission with defining "extraordinary and compelling reasons" through issued policy statements. *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (per curiam). Currently, "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* at 802. While U.S.S.G. § 1B1.13 is non-binding, the Sentencing Commission statements therein "may inform a district court's discretion" regarding defendant-filed compassionate release motions. *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)). U.S.S.G. § 1B1.13(2) advises courts against reducing the sentences of defendants who would endanger the community. *See United States v. Blick*, No. CR17-0216-JCC, 2021 WL 1313110, at *1 (W.D. Wash. Apr. 8, 2021) (noting that the court finds the consideration appropriate); *see also United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) (affirming denial of compassionate release because the defendant remained a danger).

## DISCUSSION

The Court originally sentenced Mr. Fillingame to the 15-year mandatory minimum prison term after he pleaded guilty to being a felon in possession of a firearm with an Armed Career Criminal enhancement. Gov.'s Resp. 1, ECF No. 40. Mr. Fillingame has served more than 11 years of his sentence and has a projected release date of June 25, 2023. *Id*. at 2. He now requests a 12-month reduction to his sentence. *Id.* at 1.

The primary criteria for granting compassionate release is the existence of an extraordinary and compelling reason. Mr. Fillingame has met this burden. In most cases, general health risks associated with COVID-19 in prisons are not extraordinary and compelling reasons. *E.g. United States v. Rennie*, No. 3:19-cr-00402-SI, 2021 WL 5053286, at *2 (D. Or. Nov. 1, 2021) (citing Ninth Circuit cases holding the same). The ailments suffered by Mr. Fillingame, however, dramatically exceed the general health risks associated with COVID-19 in prisons. Mr. Fillingame is 57 years old. In 2009, he lost one kidney to cancer and his remaining kidney is compromised by stage-three kidney disease. Def.'s Mot. 5. The Court is persuaded by the increasing data revealing that previous COVID-19 infection leaves individuals 35% more susceptible to long-term kidney damage. *Id.* at 6. Mr. Fillingame has already contracted COVID-19, and the potential for further harm to his remaining kidney leaves him continuously vulnerable despite his recovery from COVID-19. *Id.* Compounded by the fact that the medical facilities at FDC SeaTac have been unable to consistently perform bloodwork or monitor his kidney disease, Mr. Fillingame's health concerns are certainly beyond the general risks faced by the prison population. *Id.*

Mr. Fillingame also suffers from a severe arm injury. Mr. Fillingame worked for the prison as a trusted electrician throughout his incarceration, at times driving 30 miles from camp to perform repairs. *Id.* at 4. On one such repair, Mr. Fillingame was cut by a cable. *Id.* The 1.5-inch cut was contaminated and became septic after days of untreated symptoms. *Id.* at 4–5. Mr. Fillingame underwent numerous procedures involving stitches, staples, and skin grafts. *Id.* at 5. Despite medical efforts, Mr. Fillingame's arm remains severely damaged and requires further medical procedures. These have been repeatedly postponed. *Id.* Taken together, Mr. Fillingame is a 57-year-old cancer survivor with stage-3 kidney disease; he has a severely injured arm in need of multiple surgeries; and he has a host of other general health concerns rendering him acutely at

risk within the prison. Def.'s Orig. Mot. Reduce Sent. 17, ECF No. 23 ("Def.'s Orig. Mot."). He has sufficiently demonstrated an extraordinary and compelling medical circumstance.

A 12-month reduction to Mr. Fillingame's sentence is congruent with the goals sentencing under § 3553(a). While acknowledging the significance of Mr. Fillingame's offense, the Court is unpersuaded that a 12-month reduction to a 180-month sentence will undermine the seriousness of the offense, protection to the public, or deterrence of further criminal conduct. Further, a 12-month reduction is a fair concession given the unexpectedly harsh conditions faced by Mr. Fillingame while serving at Lompoc. *Id.* at 11–12. Lompoc had record-high numbers of COVID-19 infections, crippling the staff and resulting in extraordinary conditions. Def.'s Orig. Mot. 11–12. Additionally, Mr. Fillingame was subjected to months of prison hospitalization to treat an injury inflicted while serving that very prison. Def.'s Mot. 8.

In resolving the § 3553(a) factors, there is considerable debate between the parties regarding Mr. Fillingame's status as an Armed Career Criminal ("ACC"). If Mr. Fillingame's previous conviction for delivery of methamphetamine is no longer an ACC predicate, this Court may consider that when weighing the sentencing factors. *See United States v. Lizarraras*, 14 F.4th 961, 967 (9th Cir. 2021) (holding that courts weighing § 3553(a) factors may consider subsequent legal developments affecting mandatory minimums). Without the ACC enhancement, Mr. Fillingame's maximum sentence would have been the ten years he already served. His release would not contravene the sentencing factors. Def.'s Mot. 11. Therefore, the question is whether his Oregon state law offense, Delivery of a Controlled Substance, is an ACC predicate.

The Supreme Court recently held that courts employing the categorical approach to determine whether a state offense is an ACC predicate requires "only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain

4 – OPINION AND ORDER

generic offenses." *Shular v. United States*, 140 S. Ct. 779, 782 (2020). Although *Shular* abrogated *United States v. Franklin*, 904 F.3d 793 (9th Cir. 2018), it has yet to be determined whether the analysis found in other Ninth Circuit opinions holding that delivery is not an ACC predicate is likewise abrogated. *See Ernst v. United States*, 293 F. Supp. 3d 1242, 1250 (D. Or. 2018) (concluding that Oregon's drug delivery statute is not categorically an ACC predicate because it's not clear Congress intended to cover that wide a swath of conduct). For now, it remains good law. The Court concedes that this issue is subject to ongoing litigation; however, Mr. Fillingame's eligibility for compassionate release does not hinge on resolving his ACC designation.

While U.S.S.G. § 1B1.13 is non-binding, it correctly informs the Court's discretion and warrants a discussion given the previous denial of Mr. Fillingame's motion for compassionate release. Other than two minor infractions, Mr. Fillingame's prison conduct has been overwhelmingly positive. Def.'s Orig. Mot. 5; Gov.'s Orig. Resp. 5, ECF No. 28. Mr. Fillingame has spent his incarceration employed by the prison in a productive and trusted capacity. Def.'s Mot. 3. By all accounts, he has been a good prison-system citizen, managing to avoid the rampant violence and gang activity that exists around him. The Court also acknowledges the modesty of Mr. Fillingame's request. In amending his previous request for immediate release, Mr. Fillingame now seeks a release that increases his chances for success. Def.'s Mot. 12. A 12-month reduction further mitigates any danger to society because it allows Mr. Fillingame time to create a comprehensive release plan, providing the necessary stability and support for a safe and successful re-entry into our community.

## **CONCLUSION**

Mr. Fillingame's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i) is GRANTED.

IT IS SO ORDERED.

DATED this 24th day of February, 2022.

                                            **/s/ Michael McShane**_____
                                            Michael J. McShane
                                            United States District Judge